THE STATE, EX REL. INTERSTATE MOTOR FREIGHT SYSTEM ET AL., *v.* O'NEILL, ATTORNEY GENERAL, ET AL.*

---

*Judgment affirmed, 167 Ohio St., 139.

(No. 5401—Decided April 30, 1957.)

*Messrs. Warner, Norcross & Judd, Mr. Leonard D. Verdier, Jr., Messrs. Calland, Stouffer & Asher, Messrs. Wiles & Doucher, Mr. Taylor C. Burneson, Messrs. Matheson, Dixon & Brady* and *Mr. J. O. Ford,* for relators.

*Mr. William Saxbe,* attorney general, *Mr. Hugh A. Sherer* and *Mr. Chester H. Hummell,* for respondents.

PETREE, P. J. This is an action in mandamus filed in this court seeking a peremptory writ to require the respondents and each of them concurrently and simultaneously to enter into and execute a reciprocity agreement with the Michigan Highway Reciprocity Board. Attached to the petition are Exhibit B (subsequently admitted in the record as relators' Exhibit No. 15) and Exhibit C (subsequently admitted as relators' Exhibit No. 14). The prayer of the petition also states that in the event the court should find that Exhibit B and Exhibit C do not effectually carry out the exemptions to the Ohio Axle Mile Tax Law provided for in Section 5728.15, Revised Code, then the relators pray that the respondents be commanded and ordered to enter into such agreement or agreements as will effectually carry into effect the exemptions provided for in Section 5728.15, Revised Code. Respondents filed answer herein.

This case was referred to a Special Master Commissioner, Sidney D. Griffith, who heard the evidence and, on December 28, 1956, filed his report together with his findings of fact, and reported his conclusions of law. He concluded his report with the following statement:

"In conclusion, with the readiness and willingness of the officials of the state of Michigan to enter into reciprocal contracts and agreements with the designated officials of the state of Ohio and with all other conditions and circumstances prescribed by Sections 4503.36, 4503.37 and 5728.15, Revised Code,

deemed to exist, it is recommended that peremptory mandamus should issue to respondents, commanding and ordering them and each of them to enter into such agreements as will effectually carry into full effect the exemptions provided for in Sections 4503.36 and 5728.15, Revised Code.

"It is further recommended that execution of Exhibit B and Exhibit C, attached to the petition, will accomplish this purpose."

Briefs had been filed by both relators and respondents during the time the Master Commissioner was considering the evidence and the law.

On March 15, 1957, the relators filed a motion for affirmance and adoption of the Special Master Commissioner's Report. The respondents, being the members of the Reciprocity Board created under Section 4503.37, Revised Code, and the public officials designated in Section 5728.15, Revised Code (hereinafter referred to as the board), after reserving all objections theretofore, filed, on February 4, 1957, six exceptions to the report of the Special Master Commissioner. Those exceptions are as follows:

"1. Exception is taken to the Special Master's conclusion that Sections 5728.15, 4503.36, and 4503.37, Revised Code, impose mandatory duties on the respondents.

"2. Exception is taken to the Special Master's conclusion that relators have a clear legal right such as is necessary to support an action in mandamus.

"3. Exception is taken to the Special Master's conclusion that the relators have a right to the benefits of the exemptions provided by Sections 4503.36, 4503.37, and 5728.15, Revised Code.

"4. Exception is taken to the Special Master's conclusion that Michigan levies a 'Highway Use Tax.'

"5. Exception is taken to the Special Master's recommendation that mandamus should issue to respondents ordering them to enter into agreements to effect the exemptions provided in Sections 4503.36 and 5728.15, Revised Code.

"6. Exception is taken to the Special Master's conclusion that the respondents should be ordered to enter into reciprocity agreements with the state of Michigan and that Exhibits B and

C attached to the relators' petition should be executed to accomplish this purpose."

It appears from the record that a reciprocity agreement was executed about 1937 between Ohio and Michigan under Section 6306-1, General Code, which is substantially the same as Section 4503.37, Revised Code. That agreement continued into effect until about October 31, 1955. Section 4503.36, Revised Code, former similar Section 6306, General Code, provides as follows:

"The owner of every motor vehicle which is duly registered in any state, district, country, or sovereignty other than this state is exempt from the laws of this state pertaining to registration and licensing and the penal statutes relating thereto, provided the owner thereof has complied with the law in regard to motor vehicles in the state, district, country, or sovereignty of his residence and complies with such law while operating and driving such motor vehicle upon the public roads or highways of this state. Such exemption shall be operative only if the law of such other state, district, country, or sovereignty makes substantially like and equal exemptions to the owners of motor vehicles registered in this state.

"Reciprocal agreements between this and any other state, district, country, or sovereignty necessary in administering this section shall be made as provided in Section 4503.37 of the Revised Code."

Section 4503.37, Revised Code, formerly General Code Section 6306-1, sets up a board consisting of the Ohio Attorney General, the Director of Highway Safety, and the member of the Public Utilities Commission who is designated by the commission for such purpose. When this case was filed, on November 3, 1955, the members of that board consisted of C. William O'Neill, Attorney General; Robert L. Moulton, member of the Public Utilities Commission; and U. C. Felty, Director of Highway Safety; whereas on November 3, 1955, the membership provided for under Section 5728.15, Revised Code, consisted of C. William O'Neill, Attorney General; Robert L. Moulton, member of the Public Utilities Commission; and Stanley J. Bowers, Tax Commissioner of the state of Ohio. There have been some substitutions of new names since this case began, where differ-

ent officials are now serving in those capacities, but the two statutes remain the same as when the case began; consequently, we have two boards of reciprocity.

It may be observed that Section 4503.36, Revised Code, by its own terms, exempted the owner of every motor vehicle which is duly registered in any state, district, country, or sovereignty other than this state from the laws of this state pertaining to registration and licensing, etc., provided the owner thereof has complied with the law in regard to motor vehicles in the state of his residence. Then, this section added: ...

"Such exemption shall be operative only as the law of such other state * * * makes substantially like and equal exemptions to the owners of motor vehicles registered in this state."

Then follows a provision that "reciprocal agreements between this and any other state * * * necessary in administering this section shall be made as provided in Section 4503.37 of the Revised Code."

Sections 5728.01 to 5728.14, inclusive, Revised Code, effective July 16, 1953, provide for an additional Highway Use Tax on all motor carriers operating within Ohio, the rate of which is based upon the number of axles, and the amount of which is determined by the operation mileage of the motor carrier, but make no statutory exemptions to residents of other states, such as are contained in Section 4503.36, Revised Code.

The relators claim, in effect, that because the state of Michigan has a mileage rate with the minimum of one mill and a maximum, for larger trucks, of two mills exacted only from common carriers and contract motor carriers of passengers or property, Ohio citizens are, by their own laws, required to forego collection of the Axle Mile Tax on Michigan carriers, in an amount up to 25 mills, levied under Section 5728.06, Revised Code. They claim this, not by reason of any exemptions set forth in the Ohio Highway Use Tax (Axle Mile) Law, but by virtue of what might be called an enabling act (Section 5728.15, Revised Code) authorizing and empowering a board of three, specified therein, to make reciprocity agreements with other states.

It should be kept in mind that the Ohio Highway Use Tax, levied under Section 5728.06 of the Revised Code, is for the

purpose, among others, of constructing and reconstructing highways and that it attempts to make it possible for those traveling the highways with heavy vehicles to be required to help pay for the highways which they use, without regard to whether those carriers are licensed in some other jurisdiction or in Ohio.

It might be well, also, to keep in mind that if this permanent writ of mandamus is granted, the entire Axle Mile Tax levied on interstate carriers may be defeated by the simple process of these carriers establishing headquarters and paying a token mileage tax of less than one-tenth of that required by Ohio law, as happened while Ohio had a reciprocity agreement with Michigan. It would seem strange to say that the Ohio Legislature intended to raise revenues to construct and maintain Ohio highways and then, in the same act, defeated itself on purpose when it created a Reciprocity Board.

It appears to us that it would be more plausible that this board, created under Section 5728.15, Revised Code, is to enter into agreements when the laws of this and another state permit and when some real reciprocal benefits may accrue to citizens of Ohio as well as to those of another state. It seems clear to us that a distinction is to be made between the reciprocity granted under Section 4503.36 of the Revised Code, and the privilege of extending reciprocity which is given to the board created by Section 5728.15 of the Revised Code.

The respondents argue that reciprocity connotes a mutuality, an interchange of favors between persons or nations or, in our case, between states; and they cite *Metropolitan Life Ins. Co.* v. *Boys, Dir.*, 296 Ill., 166, 129 N. E., 724, and *State, ex rel.*, v. *Insurance Co.*, 49 Ohio St., 440, 31 N. E., 658, 34 Am. St. Rep., 573, 16 L. R. A., 611. They contend, further, that the board set up under Section 5728.15, Revised Code, was intended by the Legislature to consider and determine if the tax laws of other states are similar to Ohio's Highway Use Tax, thereby qualifying such state for reciprocity, and, if such conditions prevail to make such state eligible for such reciprocity, the board should determine the wisdom of entering into a reciprocal agreement.

Respondents urge also that reciprocity is not a right which has been extended to the relators in this case or to any other citizens of this or other states, but is a privilege which the Leg-

islature in its wisdom may make provision for. Respondents cite considerable authority in their briefs, which seem to us to sustain that position. We, therefore, hold that this is not a right extended either to the relator from Michigan or to the relator from Ohio. In other words, the board created by Section 5728.15, Revised Code, is not witholding from either of the relators a right vested in them by statute, and, since there is no existing reciprocity agreement between Michigan and Ohio, their rights are not being violated by the failure to make the agreement which they are attempting to compel by this action.

It is our opinion that under Section 5728.15 of the Revised Code, the board is not required to enter into a reciprocal agreement requested by relators or into any other agreement which the board deems unfair to or unwise for the people of the state of Ohio.

While there may be some doubt that respondents' exception 4 to the Report of the Special Master Commissioner can be sustained under the ruling of the Supreme Court in *Interstate Motor Freight System* v. *Bowers, Tax Commr.*, 164 Ohio St., 122, 128 N. E. (2d), 97, we sustain, however, the first, second, third, fifth and sixth of the respondents' exceptions. The action of the Special Master Commissioner in his rulings on admissibility of evidence and exhibits is hereby affirmed and adopted. As to all other controverted matters contained in his report, the motion of the relators for adoption and confirmation of the Special Master Commissioner's Report is overruled. There has been, in the opinion of the court, no clear showing of a right to a permanent writ of mandamus.

*Writ denied.*

BRYANT and MILLER, JJ., concur.